## The Proposal

Skyward Mobile will create a multi-platform application that exhibits similar functionality to the images below. Essentially, for a given area, the end user will be able to pick successively more focused areas, eventually resulting in a particular traffic camera. The figures below represent the essential functionality.



This is a custom application that will be developed on
the Skyward **Apx** platform. This application is not
derivative of any other application currently deployed
by Skyward, and is a unique application.


**Deliverables**
     **The Application**

Skyward will develop an application that at
rollout supports 80 handset models of Global
Traffic Network's choosing. Currently supported
platforms include Java, Symbian, BREW, RIM, Palm
and Windows Mobile. Additional handset support
will be developed over time at no additional cost
to Global Traffic Network.

The functional specification of this application
is as follows:

- **Phase 1**
  - The application will provide a visual
    interface consisting of a sequence of
    roadmap views to allow the user to select
    a traffic camera feed.
  - The first map view will allow the user to
    select from one of several subdivisions.
  - The subdivisions will appear as different
    highlighted regions of the map as the user
    navigates through the choices.
  - Once selected, the view will change to a
    zoomed map of that subdivision from which
    the user may select another subdivision.
  - This process will continue until the user
    is able to select from a set of cameras on
    the map.
  - The approximate perspective of each camera
    will be highlighted on the map as the user
    navigates through the options.
  - Upon selecting a camera, the application
    will display an image or video from that
    camera if available.
  - Static images may be played in a series to
    simulate a video feed from the camera.
  - The user will be able to configure up to
    10 of the camera views as presets to be
    accessed via the 10 numeric keys of the
    phone with one touch.

- **Phase 2**
  - This will include the integration of
    location-based services for appropriate
    carriers. Not all carriers offer LBS, nor
    do all handsets support LBS. The following

functionality will be available, minimally
on Telstra and Telus handsets that support
LBS

- o Users shall be able to select from
  a subset of cameras based upon the
  current location.
- o Users will be able to listen to an
  audio feed of traffic information
  specific to the current
  metropolitan area.
- o Optionally, users may select which
  audio feed to listen to in the
  application.

**The Support**
Skyward Mobile will provide 24/7/365 hosting and
monitoring of this application. Further, Skyward
will engage hosting facilities that are
geographically advantageous to GTN in order to
reduce latency issues. Further, Skyward will
offer 24/7 application support to GTN customers
via a third party call center.

**Customer Obligations**
Global Traffic Network will provide appropriate
XML feeds, the specifications of which will be
developed by Skyward Mobile, that provide
locations of cameras and intersections. Further,
Global Traffic Network will be responsible for
the cost of any and all fees associated with the
licensing of map images for use in the
applications.

Global Traffic Network is responsible for any
travel and expenses incurred by Skyward Mobile
for setup and ongoing operation of this service.

**Fees and Deliverables**
Skyward Mobile will develop a traffic camera viewing
application that supports 180 handsets of GTN's
choice.  The initial development will create 4
discrete applications, covering Eastern Canada,
Western Canada, Eastern Australia and Western
Australia. Additional applications covering other
areas will require additional **Apx** licenses and
regional development fees. The application
functionality in Phase 1 will be developed within 90

days of engagement, and Phase 2 will be developed
within 60 days of the deployment of the Phase 1
application.

Volume Apx License:

| Number of Applications | Cost Per Apx License (Year 1) | Cost Per Apx License (Year 2 and forward) |
|---|---|---|
| 1-4 | $100,000.00 USD | $75,000.00 USD |
| 5-10 | $80,000.00 USD | $60,000.00 USD |
| 11-20 | $60,000.00 USD | $50,000.00 USD |
| 21+ | $50,000.00 USD | $35,000.00 USD |

Phase 1 Application Development Fee:
$200,000.00 USD
(E & W Canada, E&W Australia)
Phase 2 Application Development Fee:
$100,000.00 USD
Regional Application Development Fee:
(Per Application)
$50,000.00 USD
Traffic Camera Integration Fee (Monthly):
(Minimum 2500 Cameras)                    $4.00 USD per
                                          camera

Hosting and Operation Fee (Monthly)
(Minimum 10,000 Users)                       $0.50 USD
per User

Distribution Fee: SMS and app provisioning

                                          $0.10 USD per
                                          distribution

Map Image Licensing Fee:                    At Cost

Fee Schedule:
        Due at Engagement:
        Apx Licensing fee, apps 1-4:
        $600,000.00 USD

        Due at Phase 1 Delivery

Phase 1 Development Fee:
$600,000.00 USD
50% Deposit Phase 2 Development Fee:
$150,000.00 USD

**Due at Phase 2 Delivery**
50% Final Payment Phase 2 Development Fee:
$150,000.00 USD


**In the event of Regional Application Development:**
    **Due at Request**
    Apx Licensing Fee:
                        As indicated above

    **Due at Delivery**
    Regional Application Development Fee:
    $50,000.00

    **Post Deployment**
    Distribution Fee                    Monthly
    Hosting                              Monthly
    Map Image Licensing Fees
    As Invoiced

## Terms

The terms outlined in this proposal will be honored until May 1, 2007.

This letter serves as a written understanding between Skyward Mobile and Global Traffic Network. It outlines the nature of this partnership, expectations for each organization, and a timeline for accomplishing these expectations. The term of this agreement is 24 months, with automatic annual renewals unless either party terminates this agreement with 30 days notice before an anniversary date.

Upon execution of this agreement, both parties may elect to agree to an additional contract which may add additional detail to the legal rights and responsibilities of each party as outlined here.

Both parties agree to keep the terms of this agreement
confidential.

This understanding may not be assigned or transferred to
another party without the written consent of the other.
**SKYWARD MOBILE**                              **GLOBAL TRAFFIC NETWORK**

_____          _____

JEREMY DE BONET, CEO

# Exhibit D



TRAFFIC.COM



**Product Description:** 30 of the top cities comprehensive traffic news, updated live, every 5 minutes. We will be adding a location aware component to the application for the Sprint launch. The product will show the metro traffic Jamcast video for the appropriate "favorite" market, or the market as determined through GPS. If location aware, a selection a major roadways within a 10 mile radius will be shown, as well as incident reports for those roads in that radius.

**Target Market:** The target market for this product is any of the 100 million commuters in the 30 target markets.

Albany, Atlanta, Austin, Baltimore, Boston, Chicago, Cincinnati, Dallas, Detroit, Houston, Indianapolis, Las Vegas, Los Angeles, Miami, Milwaukee, Minneapolis, New York City, Orlando, Philadelphia, Phoenix, Pittsburgh, Sacramento, San Diego, San Francisco, St. Louis, Seattle, Tampa, Washington D.C.

**Partners:** Skyward and Traffic.com are currently under contract for this project.

**Handset Support:** This will work on all current Vision and Power Vision devices; further, location support will be added to support all Sprint Devices

**Sales Model:** We suggest a $4.99-$5.99 MRC for access to the Traffic.com Jamcast product.



**Marketing Plan:** Skyward and Traffic.com will cooperatively market this product through the Traffic.com WAP site and through WAP advertisements on the Sprint ad network. Further, Traffic.com will put this in rotation in the advertisements.

**Commercially Ready:** September

# Exhibit E

**Mass High Tech: The Journal of New England Technology – October 1, 2007**
http://masshightech.bizjournals.com/masshightech/stories/2007/10/01/story13.html



Friday, September 28, 2007

# Skyward launches mobile apps tech

Mass High Tech: The Journal of New England Technology - by Efrain Viscarolasaga Mass High Tech

Jeremy De Bonet carries around eight cell phones. But it's not for status. It's to prove a technolo
built on his company's platform can work on any phone, across any network.

De Bonet is the co-founder and CEO of Skyward Mobile LLC, a year-old company making its de
person company in Woburn has been working on its application-development platform for mor
developed a number of applications, including a music player, an indexed reader for the King Ja
hangman.

Skyward's team has built 50 applications during the past four months for content partners such
Navteq Corp. and Los Angeles-based Platinum Studios Inc., which makes multimedia applicatio

"Our application developers are not burdened by concerns about the device or its layout," said I
mobile television provider MobiTV Inc.

Now, a bootstrapped Skyward is ready to release its product and make a pitch for private fundir

Skyward Mobile's promise to deliver any application to any phone over any carrier is a bold stat
several months to a year to build mobile applications for a single handset. And each new handse
screen size and formats from model to model.

The idea behind the technology is to use software on both the phone and the server to "fill in" di
and other characteristics to essentially create a mini-operating system capable of running Skyw

Skyward Mobile is not the only company pounding the "all content on all devices" drum, howev
Lowell's Acopia Networks Inc. and Acton's ArrowPoint Communications Inc., launched PeerMe

According to De Bonet, who recently spoke with Wu about his startup, Skyward does not overla
to develop applications that would fit into PeerMeta's infrastructure plans.

De Bonet co-founded the company with Mike Wessler, a former researcher at Sun Microsystem:
President Al Gore's technology staff.

*All contents of this site © American City Business Journals Inc. All rights reserved.*

# Exhibit F

Skyward "Demo"

 Choose from application menu

 Display initialization screen

 Select area of interest

 Select camera to view

 Transition to camera video view

 Display moving camera video

CONFIDENTIAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
3RD DIMENSION INC.,                          :

                Petitioner,         :      INDEX NO. _____/07

    - against -                               :

                              :
JEREMY DeBONET and SKYWARD MOBILE,           :
LLC,                                         :
                              :
                Respondents.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN AID OF ARBITRATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT ...............................................................................................................4

I.   3RD DIMENSION IS ENTITLED TO INJUNCTIVE
     RELIEF UNDER N.Y. C.P.L.R. § 7502(C) ........................................................4

II.  3RD DIMENSION IS ENTITLED TO AN INJUNCTION
     PURSUANT TO N.Y. C.P.L.R. § 6301 ...............................................................6

     A.   IRREPARABLE HARM WILL RESULT ABSENT
          AN INJUNCTION ...................................................................................6

     B.   3RD DIMENSION IS LIKELY TO SUCCEED ON
          THE MERITS ..........................................................................................8

          1.   Respondents Breached the Work Order and
               Confidentiality Agreement.............................................................9

          2.   Respondents Misappropriated 3rd
               Dimension's Trade Secrets ...........................................................10

     C.   THE BALANCE OF EQUITIES FAVORS 3RD DIMENSION ..........................12

CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ashland Mgmt., Inc. v. Janien,*
    82 N.Y.2d 395, 604 N.Y.S.2d 912 (1993) .................................................................................10

*Bisca v. Bisca,*
    108 Misc. 2d 227, 437 N.Y.S.2d 258 (N.Y. Sup. Ct. Nassau Cty 1981) .............................8

*CanWest Global Commc'ns Corp. v. Mirkaei Tikshoret Ltd.,*
    9 Misc. 3d 845, 804 N.Y.S.2d 549 (N.Y. Sup. Ct. N.Y. Cty 2005) ..........................5, 6, 12

*Doubleclick, Inc. v. Henderson, et al.,*
    1997 WL 731413 ..............................................................................................................6

*Lumex Inc. v. Highsmith,*
    919 F.Supp. 624 (E.D.N.Y. 1998) .................................................................................6

*Matter of H.I.G. Capital Management, Inc. v. Ligator,*
    233 A.D.2d 270, 650 N.Y.S.2d 124 (1st Dep't 1996) .......................................................4

*Matter of Guarini (Severini),*
    233 A.D.2d 196, 650 N.Y.S.2d 4 (1st Dep't 1996) ...........................................................4

*Nat'l Telecomm. Ass'n v. Nat'l Commc'n Ass'n,*
    189 A.D.2d 573, 592 N.Y.S.2d 591 (1st Dep't 1993) ....................................................4, 5

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.,*
    5 Misc. 3d 285, 783 N.Y.S.2d 758 (N.Y. Sup. Ct. N.Y Cty 2004) ........................... passim

*Terrell v. Terrell,*
    279 A.D.2d 301, 719 N.Y.S.2d 41 (1st Dep't 2001) ......................................................6, 8

*Troll Co. A/S v. Uneeda Doll Co.,*
    400 F. Supp. 2d 601 (S.D.N.Y. 2005) .............................................................................6

*U.S. Reins. Corp. v. Humphreys,*
    205 A.D.2d 187, 618 N.Y.S.2d 270 (1st Dep't 1994) ......................................................10

*Willis of New York, Inc. v. DeFelice,*
    299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dept. 2002) .........................................................6

**Other Authorities**                                                                           **Page(s)**

N.Y. C.P.L.R. § 6301 (McKinney 2007) ..............................................................................6

i

N.Y. C.P.L.R. § 7502(c) (McKinney 2007)..................................................................................4

Restatement [First] of Torts § 757, Comment b ........................................................................10

Restatement of Torts § 757, Comment b ...................................................................................10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

3RD DIMENSION INC.,

                       Petitioner,

        - against -

JEREMY DeBONET and SKYWARD MOBILE,
LLC,

                  Respondents.

------------------------------------------------x

INDEX NO. _____/07

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN AID OF ARBITRATION

Petitioner, 3rd Dimension Inc. ("**Petitioner**" or "**3rd Dimension**"), respectfully submits

this memorandum of law in support of its motion for a temporary restraining order and

preliminary injunction in aid of arbitration against Skyward Mobile, LLC, and Jeremy DeBonet

(collectively, "**Respondents**").

## PRELIMINARY STATEMENT

3rd Dimension seeks a temporary restraining order and preliminary injunction to protect

its proprietary technology, intellectual property and confidential information from further abuse

and misappropriation by Respondents.  If Respondents are permitted to continue

misappropriating 3rd Dimension's proprietary technology, 3rd Dimension's competitive edge

within its industry will be irreparably compromised, causing a devastating and immeasurable

effect on 3rd Dimension's business.

On or about May 1, 2006, 3rd Dimension entered into a work order ("**Work Order**")

with Respondents to "develop and enhance" 3rd Dimension's live mobile traffic cam application

(the "**Traffic Cam Application**"). Respondents served as independent contractors and were contractually bound by the Work Order's express language that all intellectual property, including "all inventions, systems, processes, designs, innovations and improvements (including source code)" related to the Traffic Cam Application, shall be the sole property of 3rd Dimension. In addition, the parties entered into a confidentiality, non-circumvention and non-disclosure Agreement ("**Confidentiality Agreement**") which expressly prohibited Respondents from disclosing to any third party any proprietary or confidential information related to the Traffic Cam Application.

Over the last several days, 3rd Dimension learned that Respondents have been brazenly using, offering to sell, and misappropriating proprietary technology by actively demonstrating and soliciting 3rd Dimension's proprietary technology and intellectual property in direct competition with 3rd Dimension. Respondents' disclosure and marketing of 3rd Dimension's proprietary information has placed 3rd Dimension at risk of losing its competitive advantage in its field of sophisticated computer applications and is causing 3rd Dimension irreparable harm including lost sales, lost profits and business opportunities, loss of goodwill and damage to its reputation.

Accordingly, 3rd Dimension seeks this Court's aid in enforcing Respondents' contractual obligations and maintaining the requisite confidentiality of 3rd Dimension's intellectual property pending a full and complete arbitration of this action.

## STATEMENT OF FACTS

Petitioner respectfully refers the Court to the Affidavit of Bruce Laskin, sworn to on October 15, 2007, ("**Laskin Aff.**") submitted in support of 3rd Dimension's motion for a temporary restraining order, for a full recitation of the facts.

Starting on or about May 1, 2006, Respondents provided services related to the development of 3rd Dimension's proprietary technology and Traffic Cam Application as an independent contractor under the Work Order. Section 8 of the Work Order expressly provided that all intellectual property, including "all inventions, systems, processes, designs, innovations and improvements (including source code)" developed by Respondents under the Work Order shall be the sole property of 3rd Dimension. (Laskin Aff., Exhibit A). Additionally, in the Confidentiality Agreement, Respondents promised to "hold in confidence and not directly or indirectly reveal, report, publish, disclose, or transfer any Confidential Information," and to "not utilize any of the Confidential Information for any purpose at any time other than contemplated by this Agreement." (Laskin Aff., Exhibit B).

3rd Dimension has been actively marketing its Traffic Cam Application for approximately one year. The Traffic Cam Application is the basis for 3rd Dimension's entire business model and is one of its most valuable proprietary assets. The Traffic Cam Application is currently available throughout the New York metropolitan area, and is in the process of being installed and launched in many other metropolitan areas throughout the United States.

3rd Dimension recently became aware that Respondents have been offering for sale a traffic cam system nearly identical to 3rd Dimension's Traffic Cam Application to wireless carriers and traffic-related companies. Specifically, Respondents have submitted a proposal for the development of a traffic camera application to a company called Global Traffic Network, a leading provider of real-time traffic information in Australia and Canada (the "**Global Traffic Network Proposal**"). In the Global Traffic Network Proposal, Respondents claim they will "create a mobile application utilizing a unique graphic selection interface that lets users intuitively and efficiently choose which traffic camera or route they wish to view." Such

description mirrors precisely the 3rd Dimension product. (Laskin Aff., Exhibit C).   In addition, 3rd Dimension learned last week that Respondents have submitted a proposal to Sprint Nextel (the "**Sprint Proposal**") and Traffic.com (the "**Traffic.com Proposal**") related to a traffic cam application, which also appears to be identical to the Traffic Cam Application. (Laskin Aff., Exhibits D and E, respectively).   Finally, Respondents have been using a demonstration program to sell their infringing traffic cam service (the "**Demonstration**").   (Laskin Aff., Exhibit F).   The Demonstration not only emulates 3rd Dimension's proprietary Traffic Cam Application, but uses the actual proprietary feeds from 3rd Dimension's own operating service, representing them as their own.

## ARGUMENT

### POINT I

### 3RD DIMENSION IS ENTITLED TO INJUNCTIVE RELIEF UNDER N.Y. C.P.L.R. § 7502(C).

Respondents should be temporarily restrained and preliminarily enjoined from their unlawful use and distribution of 3rd Dimension's Traffic Cam Application.   Under New York law, a petitioner is entitled to an injunction in aid of arbitration "upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." N.Y. C.P.L.R. § 7502(c) (McKinney 2007).   This provision is the "sole applicable standard" in deciding whether to grant an injunction in aid of arbitration. *Matter of H.I.G. Capital Management, Inc. v. Ligator*, 233 A.D.2d 270, 270, 650 N.Y.S.2d 124, 124 (1st Dep't 1996) (holding that "rendered ineffectual" standard is "sole applicable standard" in deciding § 7502(c) motion); *See also Matter of Guarini (Severini)*, 233 A.D.2d 196, 196, 650 N.Y.S.2d 4, 4 (1st Dep't 1996) (holding that trial court "properly refused to consider the merits" of an arbitrable claim that was the basis for petitioner's § 7502(c) motion); *Nat'l Telecomm. Ass'n v.*

*Nat'l Commc'n Ass'n*, 189 A.D.2d 573, 573, 592 N.Y.S.2d 591, 591 (1st Dep't 1993) ("In arguing that petitioner has failed to demonstrate irreparable harm and a probability of success on the merits, respondent would have this Court adopt an inappropriate standard for deciding whether relief should be granted under CPLR 7502(c), under which the ground for entertaining an application . . . is whether the award may be rendered ineffectual without it.") (internal quotation marks and citations omitted)).

Unless this Court restrains Respondents from distributing 3rd Dimension's proprietary software, any later arbitration judgment will be rendered ineffectual. If Respondents continue to disclose and sell 3rd Dimension's Traffic Cam Application, 3rd Dimension's proprietary technology will be in the hands of its competitors, sales will be lost, and Petitioner's reputation and business advantage will be eroded. At that point, a judgment and/or a permanent injunction would be meaningless and would fail to compensate or protect 3rd Dimension. In addition, a judgment against Respondents would be ineffectual once 3rd Dimension has suffered this severe irreparable harm that cannot be rectified monetarily. *See CanWest Global Commc'ns Corp. v. Mirkaei Tikshoret Ltd.*, 9 Misc. 3d 845, 872, 804 N.Y.S.2d 549, 571 (N.Y. Sup. Ct. N.Y. Cty 2005) (finding that where failure to temporarily restrain defendants would lead to transfer of property to third parties, such "transfer would render a preliminary injunction ineffectual since it would only constrain [defendant] and not the new owners of [the property]"). Temporarily restraining and enjoining Respondents from distributing 3rd Dimension's proprietary technology and intellectual property, pending the arbitration proceeding, is the only way to protect 3rd Dimension from continued harm.

## POINT II

### 3RD DIMENSION IS ENTITLED TO AN INJUNCTION PURSUANT TO N.Y. C.P.L.R. § 6301.

Even if this Court were to require that 3rd Dimension meet the preliminary injunction standard set forth in N.Y. § C.P.L.R. 6301, 3rd Dimension still would be entitled to injunctive relief. Under N.Y. C.P.L.R. § 6301, the moving party must demonstrate (1) a likelihood of success on the merits, (2) a potential for irreparable harm if the injunction is not granted, and (3) a balance of equities in its favor to warrant a preliminary injunction. *See Terrell v. Terrell*, 279 A.D.2d 301, 303, 719 N.Y.S.2d 41, 43 (1st Dep't 2001); *see also* N.Y. C.P.L.R. § 6301 (McKinney 2006) (a temporary restraining order "may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had"). As shown below, each of these factors is clearly supported and strongly favors the relief sought by 3rd Dimension.

### A.    IRREPARABLE HARM WILL RESULT ABSENT AN INJUNCTION.

3rd Dimension will suffer serious and irreparable injury absent a TRO and preliminary injunction. Under New York law, "[i]rreparable harm is presumed, where . . . trade secrets have been misappropriated." *Doubleclick, Inc. v. Henderson, et al.*, 1997 WL 731413, *7, No. 116914/97 (Nov. 7, 1997 Sup. Ct. NY Cty) *citing Lumex Inc. v. Highsmith*, 919 F.Supp. 624, 628 (E.D.N.Y. 1996); *see also Troll Co. A/S v. Uneeda Doll Co., 400 F. Supp. 2d 601, 603 (S.D.N.Y. 2005)* ("When a copyright is infringed, irreparable harm normally is presumed"). Moreover, loss of reputation and goodwill, as well as likely loss of business, constitutes irreparable harm and justifies immediate injunctive relief. *See, e.g., Willis of New York, Inc. v. DeFelice*, 299 A.D.2d 240, 750 N.Y.S.2d 39 (1st Dep't 2002) (finding that loss of business is irreparable damage); *CanWest Global Commc'ns Corp.*, 9 Misc. 3d at 872, 804 N.Y.S.2d at 571 (finding "loss of

customers, revenue and an erosion of its reputation" constitutes irreparable harm); *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 5 Misc. 3d 285, 783 N.Y.S.2d 758 (N.Y. Sup. Ct. N.Y Cty 2004) (loss of industry leader's business and position as a market leader constitutes irreparable harm).

Here, 3rd Dimension's entire technology platform, upon which its business model is based, is at risk of being unlawfully disseminated. With unfettered access to 3rd Dimension's intellectual property and trade secrets, Respondents have brazenly disseminated and offered to sell the very propriety technology developed and enhanced under contract for 3rd Dimension. As a result of Respondents' actions, 3rd Dimension stands to lose substantial business, revenue and market position if Respondents are not enjoined from marketing and selling 3rd Dimension's proprietary technology as their own. For example, On October 10, 2007, 3rd Dimension's Chief Operating Officer, Bruce Laskin ("**Laskin**") met with a Product Manager at Sprint Nextel who is responsible for, among other things, procuring traffic-related applications for their network. Laskin introduced Sprint to 3rd Dimension's Traffic Cam Application. The Sprint Product Manager told Laskin that while he was impressed by 3rd Dimension's Traffic Cam Application, Sprint may not be interested in it because it was highly similar to an application they were already planning to launch from respondent, Skyward Mobile. (Laskin Aff., ¶ 30). With 3rd Dimension's business on the line, there is no doubt that irreparable harm will result if Respondents' illicit conduct is not enjoined.

Respondents expressly admit in the Confidentiality Agreement that given the "unique nature of the Confidential Information . . . in the event that a party fails to comply with any of its obligations under this Agreement, each party to this Agreement will suffer irreparable economic harm" and that "irreparable harm that monetary damages will be inadequate to compensate."

- 7 -

The Confidentiality Agreement also expressly states that "the injured party will be entitled to seek immediate injunctive relief." As part of Respondents' obligations under the Confidentiality Agreement, they expressly promised to "hold in confidence and not directly or indirectly reveal, report, publish, disclose or transfer any Confidential Information for any purpose." As an independent contractor hired to develop and enhance the Traffic Cam Application, Respondents had access to 3rd Dimension's most confidential and proprietary intellectual property, including the source code for the Traffic Cam Application and proprietary trade secrets, including information concerning 3rd Dimension's business model, marketing plans, relationships with third parties, and market research. 3rd Dimension has invested substantial resources in the development of its proprietary technology, and Respondents' disclosure of this technology to third parties irreparably harms 3rd Dimension.

### B.     3RD DIMENSION IS LIKELY TO SUCCEED ON THE MERITS.

3rd Dimension is likely to succeed on the merits of its claims given Respondents' blatant breaches of contract and misappropriation of Petitioner's trade secrets. To prove a likelihood of success, "[a] prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further proceedings." *See Terrell,* 279 A.D.2d at 303; 719 N.Y.S.2d at 43. Where the purpose of a preliminary injunction "is only to preserve the *status quo,* the strength and clarity of plaintiff's showing in support of the application as to his or her probabilities of success in the action are not so important." *Bisca v. Bisca, 108* Misc. 2d 227, 233, 437 N.Y.S.2d 258, 262 (N.Y. Sup. Ct. Nassau Cty 1981); *see also Sylmark Holdings Ltd.,* 5 Misc. 3d 285, 783 N.Y.S.2d 758 (finding that plaintiff sought to preserve status quo by enjoining defendant from selling product in violation of confidentiality agreement).

### 1.    Respondents Breached the Work Order and Confidentiality Agreement.

"To establish a breach of contract claim, the plaintiffs must allege the specific terms of the agreement, the consideration, the plaintiffs' performance, and the defendants' breach of the agreement." *Sylmark Holdings Ltd.*, 5 Misc. 3d at 285, 783 N.Y.S.2d at 758.  Under the unambiguous language of the Work Order, 3rd Dimension was the sole and exclusive owner of all intellectual property related to the Traffic Cam Application.  (Laskin Aff., Exhibit A, ¶ 8). Moreover, under the express terms of the Confidentiality Agreement, Respondents promised to keep confidential all intellectual property and trade secrets related to the Traffic Cam Application.  (Laskin Aff., Exhibit B, ¶¶ 3-4).  The offering of a product strikingly similar to Petitioner's demonstrates a breach of contract.  *See Sylmark Holdings Ltd.* 5 Misc. 3d at 285, 783 N.Y.S.2d at 758 (enjoining defendant-manufacturer from sale of oven mitt products due to "substantial evidence" of breach of confidentiality and non-disclosure agreement where defendant "design[ed], manufactur[red] and s[old]" products with same functionality, properties and appearance as plaintiff's oven mitts).  While 3rd Dimension has fully and completely fulfilled its obligations under the Work Order and Confidentiality Agreement, Respondents, on the other hand, have engaged in the precise conduct that any technology company fears and that 3rd Dimension expressly prohibited in its Work Order and Confidentiality Agreement.

Respondents are marketing and attempting to sell a traffic application virtually identical to 3rd Dimension's proprietary Traffic Cam Application.  The Global Traffic Network Proposal, the Sprint Proposal, the Traffic.com Proposal and the Demonstration all provide indisputable evidence of Respondents' unlawful conduct.  In fact, the Demonstration not only emulates 3rd Dimension's proprietary application, but uses the actual proprietary feeds from 3rd Dimension's own operating service.  The proposals and the Demonstration provide substantial evidence of Respondents' breach of the Work Order and Confidentiality Agreement.

Respondents violated several of their contractual obligations with 3rd Dimension, rendering likely 3rd Dimension's success on the merits of its breach of contract claim. Accordingly, 3rd Dimension respectfully requests that this Court issue a temporary restraining order and preliminary injunction enjoining Respondents from any further use of 3rd Dimension's proprietary technology.

### 2.    Respondents Misappropriated 3rd Dimension's Trade Secrets.

"To establish a claim for misappropriation of trade secrets, plaintiff must show (1) that it possesses a trade secret, and (2) that defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Sylmark Holdings Ltd.,* 5 Misc. 3d at 297, 783 N.Y.S.2d at 770.  Under New York law, a trade secret is any "formula, pattern, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know of or use it."[1]  *U.S. Reins. Corp. v. Humphreys*, 205 A.D.2d 187, 191, 618 N.Y.S.2d 270, 273 (1st Dep't 1994) (citing Restatement of Torts § 757, Comment b); *see also Ashland Mgmt., Inc. v. Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917-918 (1993).

Respondents acknowledge in the Confidentiality Agreement that 3rd Dimension's technology and proprietary information are secret and not to be disclosed.  The Confidentiality Agreement expressly states, "The parties to this Agreement mutually agree to hold in confidence and not directly or indirectly reveal, report, publish, disclose or transfer any Confidential Information to any person or entity other than a key senior employee or other party or parties

---

[1] The following factors are considered when analyzing a claim of trade secrecy: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Sylmark Holdings Ltd.*, 5 Misc. 3d at 300, 783 N.Y.S.2d at 772, citing Restatement [First] of Torts § 757, Comment b.

who have absolute need to know such Confidential Information." (Laskin Aff., Exhibit B). This language is an express acknowledgement by Respondents that the intellectual property related to the Traffic Cam Application constitutes a trade secret. *See Sylmark Holdings Ltd.,* 5 Misc. 3d at 297, 783 N.Y.S.2d at 770 ("[I]t is important to note that [defendant] acknowledged in its agreements with [p]laintiff] that the various confidential materials and information [plaintiff] was providing to it were secret").

3rd Dimension invested a significant amount of time, energy and resources in creating the Traffic Cam Application, developing marketing plans, and negotiating and implementing agreements with a number of state and city departments of transportation to provide the required traffic feeds. Under the terms of the Work Order, 3rd Dimension permitted Respondents to have access to this proprietary information "solely in connection with performance of the [development] services." (Laskin Aff., Exhibit A). 3rd Dimension prohibited Respondents from using and/or disclosing the information. (Laskin Aff., Exhibit A). Moreover, 3rd Dimension consistently has invested, and continues to invest, vast amounts of time and resources in protecting the confidentiality of the Traffic Cam Application by, among other things, requiring its developers and business partners to execute non-disclosure agreements. The Traffic Cam Application is the basis for 3rd Dimension's entire business and is its most valuable proprietary asset, providing Petitioner with a competitive advantage in its industry. These factors establish conclusively that the intellectual property related to the Traffic Cam Application constitutes a trade secret under New York law.

Respondents' brazen, unauthorized use and distribution of the Traffic Cam Application in its Global Traffic Network Proposal, Sprint Proposal, Traffic.com Proposal, and Demonstration establish that they have misappropriated 3rd Dimension's trade secrets in the Traffic Cam

- 11 -

Application. Accordingly, 3rd Dimension has a likelihood of succeeding on the merits of its claim for misappropriation.

### C.  THE BALANCE OF EQUITIES FAVORS 3RD DIMENSION.

In light of Respondents' actions and the harm caused to 3rd Dimension, the balance of equities tips strongly in favor of 3rd Dimension. Notably, "equity does not favor an agent which breaches the duty of confidentiality owed its principal." *Sylmark Holdings Ltd.*, 5 Misc. 3d at 300, 783 N.Y.S.2d at 772 (enjoining manufacturer from distributing products made from plaintiff's proprietary information in violation of agreements between the parties). As described above, Respondents have breached their most important obligation under the Work Order and breached the duty of confidentiality owed under the Confidentiality Agreement. Respondents' unlawful conduct has resulted in irreparable harm to 3rd Dimension and its business, and will continue to do so if Respondents are not temporarily and preliminarily enjoined from using 3rd Dimension's proprietary technology. Accordingly, 3rd Dimension is entitled to an injunction to preserve the status quo while arbitration is pending. *CanWest Global Commc'ns Corp.,* 9 Misc. 3d at 872, 804 N.Y.S.2d at 571 (where plaintiff "merely seeks to maintain the *status quo,* the balance of equities tilt in its favor"). Respondents, by contrast, will not suffer any harm as a result of a restraining order preventing them from using, distributing, and/or offering for sale proprietary property that is not theirs and which they have no right to use. Under these circumstances, Petitioner respectfully requests that the Court issue a temporary restraining order and preliminary injunction in aid of arbitration.

## CONCLUSION

For the foregoing compelling reasons, 3rd Dimension respectfully requests that the Court

issue a temporary restraining order and grant a preliminary injunction as prayed for in 3rd

Dimension's Order To Show Cause.

Dated:    New York, New York
          October 15, 2007

                                        DLA Piper US LLP

                                        By:_____
                                            Palmina M. Fava
                                            Christine M. Jaskiewicz
                                        1251 Avenue of the Americas
                                        New York, New York 10020
                                        Tel. (212) 335-4500
                                        Fax (212) 335-4501

                                        *Attorneys for Petitioner*
                                        *3rd Dimension Inc.*

To:    Jeremy DeBonet
       Skyward Mobile, LLC
       130 New Boston St.
       Suite 103
       Woburn, Massachusetts.
       *Respondents*

- 13 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
3RD DIMENSION INC.,                          :
                                             :
                     Petitioner,             :        INDEX NO. _____/07
                                             :
          - against -                        :
                                             :        **STATEMENT IN SUPPORT OF**
JEREMY DeBONET and SKYWARD MOBILE,           :        **REQUEST FOR ASSIGNMENT**
LLC,                                         :        **TO COMMERCIAL DIVISION**
                                             :
                     Respondents.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

     Christine M. Jaskiewicz, counsel for 3rd Dimension Inc., the Petitioner in this matter,

submits this Statement and the accompanying copy of the pleadings, pursuant to Section 202.70

(d) (2) of the Uniform Rules for the Trial Courts, in support of the request of said party for the

assignment of this matter to the Commercial Division of this court.

     (1)  I have reviewed the standards for assignment of cases to the Commercial Division set

forth in Section 202.70.  This case meets those standards.  I therefore request that this case be

assigned to the Division.

     (2)  The sums at issue in this case (exclusive of punitive damages, interest, costs,

disbursements, and counsel fees claimed) are equal to or in excess of the monetary threshold of

the Division in this county as set out in Subdivision (a) of said Section, or equitable or

declaratory relief is sought, in that Petitioner seeks a temporary restraining order and preliminary

injunction in aid of arbitration.

     (3)  This case falls within the standards set out in Subdivision (b) of the Section and does

not come within the groups of cases set out in Subdivision (c) that will not be heard in the

Division, in that the action involves a business tort and breach of contract arising out of business

dealings.

Dated:    New York, New York
          October 15, 2007

DLA Piper US LLP

By:_____
          Palmina M. Fava
          Christine M. Jaskiewicz
          1251 Avenue of the Americas
          New York, New York 10020
          Tel. (212) 335-4500
          Fax (212) 335-4501

*Attorneys for Petitioner*
*3rd Dimension Inc.*

## REQUEST FOR JUDICIAL INTERVENTION

UCS-840(REV 1/2000)

| Supreme | New York | | | For Clerk Only |
|---|---|---|---|---|
| COURT | COUNTY | INDEX NO. | DATE PURCHASED | |

PLAINTIFF(S):

3rd Dimension Inc.

IAS entry date

DEFENDANT(S):

Jeremy DeBonet and Skyward Mobile, LLC

Judge Assigned

RJI Date

Date issue joined: _____ Bill of particulars served (Y/N):   [ ]Yes      [ ]No

NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of
    readiness

[ ] Notice of motion (return date:_____)
    Relief sought _____

[X] Order to show cause
    (clerk enter return date:_____)
    Relief sought temporary restraining order
[ ] Other ex parte application (specify:

_____)

[ ] Notice of petition (return date:_____)
    Relief sought _____

[ ] Notice of medical or dental malpractice
action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____

_____)

NATURE OF ACTION OR PROCEEDING (Check ONE box only)

MATRIMONIAL
[ ] Contested                          -CM
[ ] Uncontested                        -UM

COMMERCIAL
[ ] Contract                           -CONT
[ ] Corporate                          -CORP
[ ] Insurance (where insurer is a
    party, except arbitration)         -INS
[ ] UCC (including sales, negotiable
    instruments)                       -UCC
[ ] *Other Commercial                  -OC
    _____

REAL PROPERTY
[ ] Tax Certiorari                     -TAX
[ ] Foreclosure                        -FOR
[ ] Condemnation                       -COND
[ ] Landlord/Tenant                    -LT
[ ] *Other Real Property               -ORP
    _____

OTHER MATTERS
[ ] *_____          -OTH

TORTS

Malpractice
[ ] Medical/Podiatric                  -MM
[ ] Dental                             -DM
[ ] *Other Professional                -OPM

[ ] Motor Vehicle                      -MV
[ ] *Products Liability                -PL

[ ] Environmental                      -EN
[ ] Asbestos                           -ASB
[ ] Breast Implant                     -BI
[ ] *Other Negligence                  -OTN

[ ] *Other Tort (including
    intentional)                       -OT

SPECIAL PROCEEDINGS
[X] Art. 75 (Arbitration)              -ART75
[ ] Art. 77 (Trusts)                   -ART77
[ ] Art. 78                            -ART78
[ ] Election Law                       -ELEC
[ ] Guardianship (MHL Art. 81)         -GUARD81
[ ] *Other Mental Hygiene              -MHYG
[ ] *Other Special Proceeding          -OSP

Check "YES" or "NO" for each of the following questions:

Is this action/proceeding against a

YES  NO                                                          YES  NO
[ ]  [X] Municipality:                                           [ ]  [X] Public Authority:
         (Specify_____)                              (Specify_____)

YES  NO
[X]  [ ] Does this action/proceeding seek equitable relief?
[ ]  [X] Does this action/proceeding seek recovery for personal injury?
[ ]  [X] Does this action/proceeding seek recovery for property damage?

Pre-Note Time Frames:
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

    ☐ Expedited: 0-8 months        ☐ Standard: 9-12 months        ☐ Complex: 13-15 months

Contested Matrimonial Cases Only: (Check and give date)

    Has summons been served?              ☐ No        ☐ Yes, Date_____

    Was a Notice of No Necessity filed?   ☐ No        ☐ Yes, Date_____

ATTORNEY(S) FOR PLAINTIFF(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | Palmina M. Fava, DLA PIPER US LLP | 1251 Avenue of the Americas New York, New York 10020 | (212) 335-4500 |
| ☐ | Christine M. Jaskiewicz, DLA PIPER US LLP | 1251 Avenue of the Americas New York, New York 10020 | (212) 335-4500 |

ATTORNEY(S) FOR DEFENDANT(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | | | |
| ☐ | | | |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

INSURANCE CARRIERS:

RELATED CASES: (IF NONE, write "NONE" below)

Title            Index #            Court            Nature of Relationship

None

        I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE
BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN
THIS ACTION OR PROCEEDING.

Dated:  10/15/2007            _____
                                    (SIGNATURE)

                             Christine M.Jaskiewicz
                                  (PRINT OR TYPE NAME)

                             Plaintiff/Petitioner
                                  ATTORNEY FOR

              ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

\forms\rji2000.wpd