**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------- X

3RD DIMENSION INC.,          :

            Petitioner,      :

    -against-        :

SKYWARD MOBILE, LLC and
JEREMY De BONET,        :

           Respondents.   :

--------------------------------------- X

Index No. 603401/07

Hon. Herman Cahn

## RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

Respondents Skyward Mobile, LLC ("Skyward") and Jeremy De Bonet,[1] and by their counsel, Cooley Godward Kronish LLP, respectfully submit this memorandum of law in opposition to Petitioner's Order to Show Cause for a preliminary injunction.

### PRELIMINARY STATEMENT

In complete and utter disregard of its contractual obligation under the Work Order to "use . . . best efforts to settle any and all disputes without resorting to arbitration and litigation," 3rd Dimension's factually baseless demand for injunctive relief should be rejected. As set forth in the accompanying Affidavit of Skyward's CEO, Jeremy De Bonet, 3rd Dimension is not entitled to injunctive relief for the following reasons: (1) Skyward has never used and is not now using in its business anything owned by or proprietary to 3rd Dimension, including its traffic cam software and so-called "proprietary feeds" as alleged in Mr. Laskin's Affidavit; (2) Skyward's "APX" platform is a new, and entirely different technology than that built by Skyward for 3rd

---

[1] Respondent Jeremy De Bonet was not a party to the Work Order upon which this special proceeding and the related arbitration are premised. De Bonet signed that agreement only on behalf of and in his capacity as an authorized representative of Respondent Skyward. Accordingly, Mr. De Bonet should be dismissed as a Respondent.

Dimension in 2006, and it shares no similarities in source code (or anything else) with the software developed under the 3rd Dimension Work Order; (3) Skyward has not used a "demonstration program" in its sales efforts or otherwise as alleged in Paragraph No. 33 of Mr. Laskin's Affidavit. The demonstration at issue was on Skyward's website since September 11, 2006, as an example of Skyward's work quality, and does not use any of 3rd Dimension's technology; (4) Skyward has never used nor is it aware of any unique marketing or similar plans. It is obvious that a traffic program may be applied to areas with roads and cars; (5) Jeremy De Bonet informed 3rd Dimension's affiant, Mr. Laskin in September 2006 of the Global Network proposal appended to the Laskin Affidavit as Exhibit C, including the fundamental technical and non-infringing differences between 3rd Dimension's software and APX. 3rd Dimension failed to bring suit for more than one (1) year after learning of APX and Skyward's plans.

Skyward's APX platform allows users numerous types and varieties of functionality. Unlike 3rd Dimension's product, it is extremely robust and flexible, and allows for the development of any application, not just traffic applications. That said, neither the Work Order nor any other contract between these parties precludes Skyward from developing and selling traffic-related software products or tools. 3rd Dimension did not bargain or pay for such a restriction and has known of such competition for more than a year. Accordingly, the instant lawsuit is nothing more than 3rd Dimension's attempt to unlawfully restrict legitimate and permitted competition, and harm Skyward and Mr. De Bonet in the marketplace.

## ARGUMENT

### I.  THE PETITIONER HAS FAILED TO SATISFY THE FACTORS REQUIRED TO OBTAIN INJUNCTIVE RELIEF.

Preliminary injunctive relief "is a drastic remedy and will only be granted if the movant establishes a clear right to it under the law and the undisputed facts found in the moving papers."

*Koultukis v. Phillips*, 285 A.D.2d 433, 435, 728 N.Y.S.2d 440, 442 (1st Dep't 2001). To prevail, the applicant must establish the following: (1) its likelihood of success on the merits; (2) irreparable injury to it absent granting the preliminary injunction; and (3) a balancing of the equities favoring the applicant. *Cullman Ventures, Inc. v. Conk*, 252 A.D.2d 222, 230, 682 N.Y.S.2d 391, 396 (1st Dep't 1998); *New York City Off-Track Betting Corp. v. New York Racing Ass'n, Inc.*, 250 A.D.2d 437, 441, 673 N.Y.S.2d 387, 390 (1st Dep't 1998); *SG Cowen Securities Corp. v. Messih*, 224 F.3d 79, 84 (2d Cir. 2000).[2] Moreover, a party seeking a preliminary injunction in connection with an arbitration must demonstrate that "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." CPLR § 7502(c).

As set forth below and in the accompanying affidavit of Skyward's Founder and CEO, Jeremy De Bonet, Petitioner has not met a single one of these requirements. Accordingly, its motion should be denied.

### A. Leaving Aside The Frivolous Nature of Petitioner's Claims, Arbitration Would Provide All Relief Available, Rendering Injunctive Relief Entirely Unnecessary Here.

If an arbitrator ultimately determines that Skyward improperly used Petitioner's proprietary property – which it will not – the arbitrator could award damages to Petitioner for any injury. Thus, arbitration provides the Petitioner with a more than effective remedy. A

---

[2]  Petitioner relies on several antiquated cases for the proposition that the traditional criteria for a preliminary injunction should not be considered in the context of a motion under CPLR § 7502(c). *See* Memorandum of Law In Support of Petitioner's Motion For a Temporary Restraining Order and Preliminary Injunction In Aid of Arbitration, dated October 15, 2007 ("Petitioner's Memo.") at 4-5. Those authorities have been superseded, however. Since 1996, New York courts have consistently applied the traditional injunction factors in the arbitration context. In addition to the cases cited in the text, *see, e.g., K.W.F. Realty Corp. v. Kaufman*, 16 A.D.3d 688, 689, 793 N.Y.S.2d 67, 68 (2d Dep't 2005) ("In addition, to obtain relief under [CPLR § 7502(c)], a petitioner must make a showing of the traditional equitable criteria for the granting of temporary relief under CPLR article 63."); Vincent C. Alexander, CPLR § 7502 Supplemental Practice Commentaries at 74 (McKinney's 1999) ("The Appellate Division, First Department, has dispelled whatever doubts may have been raised by its prior caselaw as to the applicability of the traditional criteria for the issuance of preliminary injunctive relief in the arbitration context").

preliminary injunction therefore is not required to prevent Petitioner's potential award from being ineffective.

Indeed, the Work Order—which is the only agreement that provides for arbitration—expressly provides that Petitioner may obtain monetary relief, and *only* monetary relief:

> [Skyward]'s liability hereunder for *damages*, regardless of the form of action, shall not exceed the total amount paid to [Skyward] for its Services pursuant to this Agreement. This *shall be [Petitioner]'s sole and exclusive remedy, both at law and in equity*.

Affidavit of Bruce Laskin, sworn to October 15, 2007 ("Laskin Aff.") at Exh. A, § 12(a) (emphasis added). This explicit contractual language effected a complete and unambiguous agreement to waive Petitioner's right to equitable relief. *Coizza v. 164-50 Crossbay Realty Corp.*, 37 A.D.2d 640, 643, 831 N.Y.S.2d 433, 436 (2d Dep't 2007); *Artstrong Homes, Inc. v. Vasa*, 23 Misc. 2d 608, 611-612, 201 N.Y.S.2d 138, 141 (Sup. Ct. Nassau Cty. 1960).

Further, independent of 3rd Dimension's <u>agreement</u> in the Work Order that its <u>sole</u> and <u>exclusive</u> remedy is money, the facts here make clear that a monetary award would be more than adequate. Leaving aside the fact that Plaintiff's claims are unfounded, what it has alleged is lost opportunity or contract damages. License fees or royalties are commonly awarded as damages in such circumstances, and there is nothing presented on these facts to treat 3rd Dimension as being entitled to more than that. *See, e.g., Production Resource Group, LLC v. Oberman*, 2003 WL 22350939, at *7 (S.D.N.Y. Aug. 27, 2003) (holding that breach of agreement regarding competition could be compensated with money damages); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) (noting that reasonable royalty is a common form of award in trade secret cases).

**B.    Mr. De Bonet's Affidavit And The Stark Differences In The Technologies Demonstrates That Petitioner's Claims Are Sure To Fail On The Merits.**

To prevail on the merits of this matter in arbitration, Petitioner will have to prove (i) that Skyward breached the Work Order by using the software built thereunder, and/or (ii) Skyward accessed or used Petitioner's proprietary feeds (these feeds collect photographic images of traffic in the greater New York City area). As set forth in the Affidavit of Jeremy De Bonet, Petitioner's claims are sure to fail for the following reasons: (1) Petitioner has no evidence, because there is none, showing that Skyward used – ever – the software it built for Petitioner; and (2) similarly, Skyward has not accessed Petitioner's "proprietary feeds." In addition, Skyward has not used and indeed is not familiar with any marketing or business plan unique to 3rd Dimension, and none was presented to this Court. *See* Affidavit of Jeremy De Bonet ("De Bonet Aff.") ¶¶ 14-17, 18-21. As such, Petitioner's demand of injunctive relief must be denied.

In addition, a party seeking injunctive relief to enjoin the use of proprietary information must specifically identify the proprietary information the defendant is alleged to have taken. *Stamack, Inc. v. Romero*, 2007 N.Y. Slip Op. 32570, 2007 WL 2815377, at *14-15 (Sup. Ct. N.Y. Cty. Aug. 8, 2007). In this case, Petitioner has not specifically identified any proprietary information allegedly misappropriated beyond vague references to a "proprietary Traffic Cam Application" and unspecified "proprietary feeds." Petitioner's Memo. at 4, 9. In addition, Petitioner claims that Skyward misappropriated their business model, marketing plans, and market research but fails to provide any detail whatsoever as to how these documents are confidential or proprietary or whether Petitioner provided them to Skyward at all. *Cf.* De Bonet Aff. ¶¶ 14-17. Petitioner's motion should be denied on this basis alone. *See, e.g., U.S. Coachways, Inc. v. Silverman*, 2007 WL 218728, at *5 (N.Y. Supr. Jan. 17, 2007) (holding that plaintiff had no shown likelihood of success on the merits on trade secret claim because

10716 v1/BN

plaintiff's allegations were wholly conclusory and without factual support); *Union Kol-Flo Corp.*

*v. Basil*, 64 A.D.2d 861, 862, 407 N.Y.S.2d 359, 359 (4th Dep't 1978) (denying preliminary

injunctive relief where pleadings and affidavits underlying application were "rife with questions

of fact, including whether trade secrets or confidential matters are involved, whether defendants

have appropriated any such, and what are the equities between the parties"). 3rd Dimension has

done nothing here except "presume" the programs are the same, and that its "feeds" were

accessed. These statements are false. In so asserting, Petitioner failed to conduct an adequate

prefiling investigation (or comply with its contract to act "in good faith to resolve"), and has

made no showing to this Court of misappropriation.

      Moreover, Skyward – through Mr. De Bonet's affidavit – has refuted all of Petitioner's

allegations that Skyward has any trade secrets belonging to Petitioner (except the source code

which is kept in a secure and confidential source code repository), and that Skyward has ever

misappropriated these trade secrets. De Bonet Aff. ¶¶ 14-17. These disputes of material fact

make a preliminary injunction inappropriate, and Petitioner's motion should be denied. *See, e.g.,*

*U.S. Coachways, Inc v. Silverman*, 2007 WL 218728 at *5 (N.Y. Supr. Jan 17, 2007) (holding

that injunction was inappropriate where plaintiff's evidentiary showing in support of

misappropriation of trade secrets and other alleged bases for injunctive relief have been refused

by opposing party); *Pearlgreen Corp. v. Chu*, 8 A.D.3d 460, 461 (2d Dept. June 14, 2004)

(holding that "[g]iven the sharply disputed issues of facts [regarding the existence of trade

secrets or misappropriated of those alleged secrets], the plaintiff was not entitled to a preliminary

injunction.").

### C.   Petitioner's Purported Injury Is Illusory, Not Irreparable.

#### 1.   Petitioner Is Not Entitled To Presumption of Irreparable Harm.

Although it may be true that irreparable harm is presumed based on the misappropriation

of a trade secret, Petitioner cannot take advantage of this presumption. *See, e.g., Production*

*Resource Group*, 2003 WL 22350939, at *7 (denying presumption of irreparable harm for trade

secrets where plaintiff failed to show that defendant has used or disclosed any of plaintiff's

confidential information or trade secrets).[3] Indeed, as noted above, Plaintiff has produced

absolutely no evidence that Skyward has any information that belongs to Petitioner (except the

permitted retention of software) that qualifies as confidential information or a trade secret, or that

Skyward has used or discloses such information. De Bonet Aff. ¶¶ 14-17, 18-21. Likewise,

Petitioner has not presented any information that suggests that Petitioner took any steps to

protect its confidential information as "trade secrets" and that the information is not publicly

available. De Bonet Aff. ¶¶ 19, 20. Moreover, simply labeling information as "confidential"

does not render it protectable such that its loss results in irreparable harm. *See, e.g., AM Medica*

*Comm. Group v. Kilgallen*, 261 F. Supp. 2d 258, 262 (S.D.N.Y. 2003), aff'd 90 Fed. Appx. 10

(2d Cir. Dec. 17, 2003) (finding that former employee's access to confidential client information

did not inexorably lead to a finding of irreparable harm to her former employer).

In addition, Plaintiff is wrong that the language in the parties' Non-Disclosure Agreement

that states that money damages would be an inadequate remedy automatically establishes

Petitioner's right to injunctive relief. "[T]he contractual language declaring money damages

inadequate in the event of a breach does not control the question whether preliminary injunctive

relief is appropriate." *Baker's Aid v. Hussman Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987).

---

[3] The cases that Petitioner cites in support of the proposition that irreparable harm will be presumed all present actual evidence of misconduct by the defendant.

2.    **Petitioner's Delay of More Than One Year In Filing Suit Precludes The Issuance Of Injunctive Relief.**

Delay in seeking a preliminary injunction is a well-settled basis for its denial. *See, e.g.*, *Tough Traveler, LTD v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) (holding that presumption of irreparable harm "is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief."); *Ivy Mar Co., Inc. v. C.R. Seasons LTD*, 907 F. Supp. 547, 563 (E.D.N.Y. 1995) (denying injunction because, in part, ten month delay in filing suit justified denial of motion); *see also Sports Channel America Assoc. v. National Hockey League*, 186 A.D.2d 417, 418, 589 N.Y.S.2d 2, 2 (1st Dep't 1992) (laches precluded injunction). "Though such delay may not warrant the denial of ultimate relief, it may 'standing alone, …preclude the granting of injunctive relief,' because the 'failure to act sooner undercuts the sense of urgency hat ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Tough Traveler*, 60 F.3d at 968 (internal quotations and citations omitted). Here, specifically to eliminate any confusion and to put Petitioner on notice of its plans, in September 2006 Mr. De Bonet and another Skyward employee telephoned and spoke to Mr. Laskin of 3rd Dimension. De Bonet Aff. ¶ 29. During that conversation, Mr. De Bonet described APX in connection with possible work for Global Traffic Network. *Id.* Petitioner could have acted then to enforce its purported rights, but delayed for over one (1) year to bring suit. Such delay is fatal to its application for an injunction. *See id.* ¶¶ 29, 31, 32.

3.    **Petitioner Has Not Shown Any Loss of Good Will, or Loss of Business To Support Any Claim of Irreparable Harm.**

Petitioner's claim that it has lost business and its good will has been damaged does not amount to irreparable harm. As an initial matter, Petitioner has not presented any evidence, let alone sufficient evidence, to support its allegation that it has suffered a loss of business or

10716 v1/BN

- 8 -

damage to its reputation or good will or, if they have suffered such harm, that it occurred as a result of Respondents' inappropriate acts. *See, e.g., Ivy Mar*, 907 F. Supp. at 565-66.

Moreover, although Petitioner has presented some (albeit slim) anecdotal evidence that it may have lost a business opportunity with Sprint, such a loss alone is not sufficient to demonstrate irreparable harm. *Ivy Mar*, 907 F. Supp. at 566. Indeed, because Petitioner may quantify any alleged lost business for Sprint, a monetary award will provide adequate redress for Petitioner if it prevailed at the arbitration. Finally, as set forth above, Petitioner contractually agreed to waive any right to injunctive relief, and in any event could always be compensated for any established wrong by a damages award.

> **D.    Entry of An Injunction Against Skyward Will Cause Unwarranted Damage To Its Reputation And In The Marketplace, Tipping The Balance Of Equities In Its Favor.**

Petitioner must also establish that the balance of the equities are in its favor—that is, that the irreparable injury to be sustained in the absence of an injunction will be more burdensome to it than the harm likely to be caused to the defendant through the imposition of an injunction. *The Credit Index, L.L.C. v. Riskwise Int'l L.L.C.*, 282 A.D.2d 246, 247, 722 N.Y.S.2d 862, 862 (1st Dep't 2001). Here, there is no question that Skyward's damage from the entry of an injunction may be irreparable. As set forth in Mr. De Bonet's Affidavit, Skyward is a start-up enterprise. De Bonet Aff. ¶ 4. Its success in the marketplace – indeed its survival – will turn not only on its ability to develop cutting edge software applications, but also on its reputation. *Id.* ¶¶ 38-40. Skyward has not done anything wrong. *Id.* ¶¶ 14-17, 38-40. An injunction would damage its relationship with its customers (and potential customers), shake the confidence of its early round investors and put it on a path it may not survive. *Id.* ¶¶ 38, 39. Such a devastating result is not warranted here.

10716 v1/BN

- 9 -

Moreover, balance of the equities weighs heavily in Skyward's favor here because Petitioner essentially seeks to enforce a non-competition agreement against Skyward which Petitioner never bargained for and never paid for such a right. *See* De Bonet Aff. ¶¶ 11, 12. Courts disfavor injunctions "which inhibit free trade and the potential for competition." *Consolidated Brandsm Inc. v. Mondi*, 638 F. Supp. 152, 158 (E.D.N.Y. 1986). As a result, the Court should read implied covenants into Petitioner's and Skyward's agreements by imposing the injunction requested by Petitioner. The motion for a preliminary injunction should be denied.[4]

## CONCLUSION

For the reasons set forth above and in the accompanying affidavits, Petitioner's motion for a preliminary injunction should be denied, and Respondents should be awarded their attorneys' fees and costs for having to defend against such unfounded claims.

---

[4] For the reasons stated above, Petitioner's motion for a preliminary injunction should be denied. However, if the Court were to issue a preliminary injunction, Petitioner would first be required to give an undertaking in an amount sufficient to pay Skyward all damages and costs which may be sustained by reason of the injunction. CPLR § 6312(b).

10716 v1/BN

Dated: New York, New York
October 18, 2007

Respectfully submitted,

COOLEY GODWARD KRONISH LLP

By: *Meg L McHart*

Scott Pashman
Meghan M. Hart
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000


OF COUNSEL:
Robert B. Lovett
The Prudential Tower
800 Boylston Street
46th Floor
Boston, MA 02199
(617) 937-2300

Attorneys for Respondents
Skyward Mobile, LLC and Jeremy De Bonet

10716 v1/BN